[S. F. No. 8602. In Bank.—December 30, 1918.]

WILLIAM LEADBETTOR et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

WORKMEN'S COMPENSATION ACT — NOTICE OF INJURY — KNOWLEDGE OF ACCIDENT.—Under section 20 of the Workmen's Compensation Act, providing that in giving notice of injury, actual knowledge on the part of the employer, or managing agent, or superintendent in charge of the work shall be equivalent to service of notice, the Industrial Accident Commission is justified in concluding that the employer had knowledge of the injury, where the foreman in charge of the work was present when the accident occurred, and had knowledge for some time after the return of the employee to work that the employee was suffering pain and not fully able to do his usual work, although he thought at the time he returned to work that he had suffered no substantial injury.

ID.—MEDICAL SERVICE—RIGHT OF EMPLOYEE.—Under section 15 (a) of such act, imposing upon the employer the duty to provide medical, surgical, and hospital treatment, and, in case of his neglect or refusal seasonably so to do, making him liable for the reasonable expenses incurred by the employee in providing the same, the employer has, in the first instance, the right to designate and select the physicians who are to give treatment to the employee, and the latter is authorized to make his own selection at the expense of the employer only where the employer has neglected or refused to provide the necessary service.

PROCEEDING in Certiorari originally instituted in the Supreme Court to review an award of the Industrial Accident Commission.  Award annulled.

The facts are stated in the opinion of the court.

Redman & Alexander, for Petitioners.

Christopher M. Bradley, for Respondents.

SLOSS, J.—*Certiorari* to review an award of the Industrial Accident Commission.  The applicant, Frank G. Pryor, was a bridge carpenter, employed by the petitioner, Leadbettor.  On July 22, 1916, he was working at Hermosa Beach.  Pryor and a number of other men were handling a heavy "bent," made of steel, when the bent settled down, crushing Pryor to the ground and resting upon his back.  An injury to the ninth dorsal vertebra resulted.

One of the points made by the petitioners, Leadbettor and his insurance carrier, is that the applicant failed to give timely notice of his injury, as required by section 20 of the Workmen's Compensation Act, [Stats. 1913, p. 291].  That section contains the proviso, however, "that actual knowledge of such accident and injury on the part of such employer, or his managing agent or superintendent in charge of the work . . . shall be equivalent to such service."  The commission found that the employer had such knowledge, and, we think, there was evidence to warrant this finding.  The foreman in charge of the work was present when the accident occurred.  After visiting a physician for examination, Pryor returned to his work.  Apparently he then thought, as did the foreman, that he had suffered no substantial injury.  In fact, he rejected the foreman's suggestion that a report of the accident be made.  The claim of the petitioners is, accordingly, that while the employer had knowledge of the occurrence of an *accident,* neither he nor his foreman was made aware that any *injury* to Pryor had resulted.  There is, no doubt, a distinction between the terms "accident" and "injury," as used in section 20.  (*Smith* v. *Industrial Acc. Commission,* 174 Cal. 199, [162 Pac. 636].)  But the evidence is that for some time after his return Pryor was suffering pain and was not fully able to do his usual work, and that these facts were known to the fore-

man.  The commission was, therefore, justified in concluding that the foreman had knowledge that, however slight in degree, some injury had been suffered.

A further contention is made on the allowance of charges for medical attendance.  The statute (section 15a) imposes upon the employer the duty to provide medical, surgical, and hospital treatment, and "in case of his neglect or refusal seasonably to do so," makes him liable for the reasonable expense incurred by the employee in providing the same.  The intent of the act obviously is that the employer shall, in the first instance, have the right to designate and select the physicians who are to give treatment to the employee.  The latter is authorized to make his own selection at the expense of the employer only where the employer has neglected or refused to provide the necessary service.  (*City of Milwaukee* v. *Miller,* 154 Wis. 652, [Ann. Cas. 1915B, 847, L. R. A. 1916A, 1, 144 N. W. 188] ; see *Massachusetts Bonding etc. Co.* v. *Pillsbury,* 170 Cal. 767, [151 Pac. 419].)  In this case Pryor made his own arrangements for medical and hospital aid, and the question is whether there was any evidence of neglect or refusal on the part of his employer to supply him with this service.

It appears that immediately after the accident Pryor went to see a physician, who merely examined him and permitted him to return to work.  He had no further medical care while he remained at Hermosa Beach.  Thereafter he went to Porterville, and while there consulted a physician, by whom he was sent to an osteopath for treatment.  In October, 1916, some three months after the accident, Pryor left for Portland, Oregon.  While there he incurred further bills for medical treatment and hospital service.

On the original submission of the application, the commission found that the employer had neglected to furnish medical and surgical services, and charged him and the insurance carrier with the value of all services rendered by physicians at the place of injury, at Porterville, and at Portland, Oregon.  A rehearing was granted on the single issue of medical expense, and thereafter the commission made its final order, reciting that Pryor had, on the day following the accident, declined the medical treatment then tendered him by his employer, but that the employer had actual knowledge, while the applicant was in Porterville, that he was receiving further medical treatment, and had neglected thereafter to again offer

medical treatment. Accordingly, the employer was held liable for the charge of the physician consulted at the place of the accident, and for bills incurred in Portland, Oregon.

No question is made of the propriety of allowing the charge of Dr. Hembree, the physician who first examined Pryor. No medical service was provided or tendered at the time of the accident, and the injured man was entitled to consult a physician of his own choice. The briefs discuss to some extent the question of whether the applicant's conduct on the next day was such as to relieve the employer from any obligation to then furnish medical service. On this question the commission, on its final hearing, decided in favor of the employer, and we must, therefore, start with the assumption that when Pryor went to Porterville the employer had not been guilty of any neglect upon which it could be charged with expenses thereafter to be incurred by him. At that time there was nothing to indicate to Leadbettor or the insurance carrier that Pryor either desired or needed medical attention. The conclusion that there was a subsequent neglect, and a consequent liability to pay for the bills incurred in Portland, is based upon the view that the employer had actual knowledge, while Pryor was in Porterville, that he was receiving further medical treatment, and that the defendants should, upon receiving such knowledge, have immediately offered medical treatment of their own choice. Pryor testified that he had told Leadbettor that he was receiving treatment at Porterville. But the commission found that the date of this communication could not be fixed, and made no allowance for the treatment obtained by Pryor at Porterville. On October 16th, when he was leaving for Portland, Pryor wrote a letter to Leadbettor. In it he said: "As for myself, I was injured, while on a job at Hermosa Beach by a bent falling on me. My back was merely examined by Dr. Melvin [a physician at Porterville] and I was sent to an osteopath for treatment. Is the policy made out so I can send the bill to the insurance company, as it hasn't been paid yet?" Under no reasonable interpretation can it be said that this letter conveyed to its recipient information that Pryor still required medical treatment for his injury. The plain import of the communication is that he had already received the needed treatment. The purpose of the communication is shown by the closing sentence, in which he inquires whether the bill may be sent to

the insurance company for payment. The only fair interpretation of the letter is that the service had ended, and the claim on that account matured. There is no warrant for saying, in the face of this statement, that there rested upon the employer a duty to tender or supply additional medical treatment, or that his failure to do so constituted any neglect on his part. The award should, therefore, be modified by eliminating the provision charging the petitioners with liability for the surgical and hospital bills incurred in Portland.

The award is annulled, and the proceeding remanded to the Industrial Accident Commission for the making of a new award in accordance with the views expressed in this opinion.

Melvin, J., Richards, J., *pro tem.,* Wilbur, J., and Angellotti, C. J., concurred.