(No. 13064.—Judgment affirmed.)

THE SUNNYSIDE COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(J. E. O'NEAL, Admr. Defendant in Error.)

*Opinion filed February 18, 1920.*

I. WORKMEN'S COMPENSATION—*compensation not authorized for injury while employee is acting as a volunteer.* Compensation may be had for an injury received while an employee is doing recklessly or negligently something which he is employed to do but not for an injury received while he is voluntarily doing something unconnected with his employment.

2. SAME—*an employer's liability for injury to volunteer depends upon knowledge or acquiescence.* Whether an employer is liable in compensation for an injury received by an employee while doing a work different from that which he was originally hired to perform depends upon the employer's acquiescence in the voluntary act or his knowledge of the existence of a custom or practice of the employee to do such work.

3. SAME—*it is a question of fact whether employer has knowledge of act of volunteer.* Where an employee hired to work in a mine as a trapper is killed while acting as a mule driver, the question whether or not the employer or his agents in charge of the work knew of the practice of the trappers to exchange work with the mule drivers is a question of fact, and the finding of the Industrial Commission on this question is final if there is any evidence to support it.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

DENISON & SPILLER, for plaintiff in error.

GEORGE R. STONE, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Harry Durham, a young man under age, employed by plaintiff· in error as a trapper in its coal mine, was killed there January 2, 1918, while driving a mule hitched to a coal car. An application was made by his administrator before the Industrial Commission for an award and an award was rendered. On petition for *certiorari* in the circuit court of Williamson county the decision of the Industrial Commission was approved. Plaintiff in error petitioned this court for a writ of error, and the case has been brought here by such writ.

On the hearing before the arbitrator it was stipulated that plaintiff in error was under the Workmen's Compensation act at the time of the injury; that the deceased was in its employ and received the fatal injury while in such employ; that plaintiff in error had notice of the accident within thirty days and that demand for compensation was made within six months.

No question is raised as to the compensation being the proper amount allowed provided the deceased was working in the line of his duty at the time he was injured, that being the only controverted question on this record.

The evidence shows that deceased was employed · by plaintiff in error as a trapper, to open and shut certain trap-doors in its coal mine. Luke Parsons, whose car Durham was driving when killed, testified that the deceased had been trapping at these doors for some time; that during the time witness had been driving a mule on the coal car, beginning in November, 1917, he had seen ·deceased driving at times for different drivers, some days not making any trips but other days making six or seven, and that the boss driver, Rollie Wright, saw the deceased driving on some of these occasions. Witness also testified that he had seen other trappers driving the coal cars; that he knew that Durham's regular duties were those of a trapper; that his

own duties were those of a driver; that the mule driven on his car had been placed in his charge; that he had not been employed by the coal company to let the deceased drive any part of the time but that they frequently had exchanged in the past and did exchange work on the day the accident happened, when the deceased was fatally injured. Other employees in the coal mine testified substantially to the same effect as to the practice of the deceased and other boys who were trappers changing with the drivers and driving the mules of the coal cars, as they understood without serious objection on the part of the managers of plaintiff in error's mine.

Rollie Wright, the boss driver in the coal mine, under whose direction the deceased was working at the time of his injury, testified that deceased was working as trapper; that he was employed for such work and not as a driver; that he had told him not to drive some time before he got hurt, on an occasion when he was driving for the witness Parsons, and told him he did not want to see him on the tail chain any more (the tail chain being where the driver was when he drove the mule) as he might get hurt; that that was the only time he had seen him driving; that other trappers had tried to drive but that he had always objected to their driving. He admitted that he had stated, in the presence of certain people at the coroner's inquest, after he had testified there as to the accident, that on the day of the accident he went to look up the boy and found that he was driving a coal car; that he let him make the trip without saying anything to him.

J. F. Goalby, superintendent of the mine, testified that at the time of the accident he was mine manager for the company and as such employed the deceased as trapper, instructing him at the time what his duties were and telling him that he was to trap doors and keep away from the mules; that these were the instructions given to all the trappers; that on one occasion the deceased said he wanted

to make more money by having a job as driver; that witness told him if he would get a permit from his parents he would let him "drive extra in the mine north;". that he did not give him this work, however, as deceased told him his parents would not give the permit, because they did not want him to drive.

This is the substance of the testimony with reference to the employment of the deceased.

There can be no question that counsel for plaintiff in error are right in arguing that there is a distinction drawn by the authorities between doing a thing recklessly or negligently which a workman is employed to do and doing a thing outside and unconnected with what he is employed to do, and that if an accident happens in the first class it arises out of and in the course of the employment but not in the latter case. (Elliott on Workmen's Compensation,— 7th ed.—50; *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) When an employee is injured in an employment different from that which he was originally hired to perform, in order to find whether the employer is liable it is necessary to determine whether or not the element of knowledge or acquiescence or a known custom on the part of the employer exists. If the employer does not know the practice or custom the employee is held to be a volunteer acting outside the scope of his authority, and if the employer does know and acquiesces, the employee is held to be acting within the scope of his authority. (*Dietzen Co.* v. *Industrial Board, supra; Central Garage* v. *Industrial Com.* 286 Ill. 291; *Mepham & Co.* v. *Industrial Com.* 289 id. 484; see, also, 1 Honnold on Workmen's Compensation, sec. 123.) "The scope of a servant's duties is to be defined by what he was employed to perform, and by what, with the knowledge and approval of his master, he actually did perform," and an employee who was performing the same services he was in the habit of performing when he was injured is not to be considered a mere volunteer. (*Dixon* v. *Chiquola*

*Manf. Co.* 86· S. C. 435; 26 Cyc. 1090; 1 Bradbury on Workmen's Compensation,—2d ed.—467.) "The voluntary offer of a willing servant to make himself useful in a matter not covered by any express command; when the proffered service is accepted by his superior although not by an approval expressed in words, cannot be said, as a matter of law, to put the servant outside the limits of his employment." (*Miner* v. *Franklin County Telephone Co.* 83 Vt. 311.) A person while employed as a runner or trucker frequently exchanged work with a co-employee in a different line of work in the same room, and this practice was known to and acquiesced in by the employer. The employee was injured while so exchanging work, and it was held that he was not a mere volunteer. *Belton Oil Co.* v. *Duncan,* 127 S. W. Rep. (Texas) 884. To the same effect see *Henneberry* v. *Doyle,* 5 B. W. C. C. (Ireland) 580; see, also, Corpus Juris, treatise on Compensation, 83.

It is evident from a reading of the testimony in this record that there is a conflict as to whether or not, on the facts, the officers of plaintiff in error acquiesced in the deceased driving a mine car. This was clearly a disputed question of fact. We have repeatedly held that the courts can not consider the weight of the evidence on controverted questions of fact but are bound by the finding of the Industrial Commission. The finding of the commission on the question whether or not plaintiff in error's officers in charge of the work acquiesced in and knew of the practice of the trappers to exchange work with the mule drivers was a question of fact, and the finding of the commission on this point cannot be disturbed by the courts.

The circuit court rightly approved the award of the Industrial Commission, and the judgment of that court will be affirmed.                                 *Judgment affirmed.*