[Sac. No. 3018.   In Bank.—September 17, 1920.]

ENGELS COPPER MINING COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] Workmen's Compensation Act—Injury by Disease—Right to Compensation.—Injury by disease is an injury for which compensation could be awarded under section 21¹ of article XX of the constitution as it read before its recent amendment.

[2] Id.—Voluntary Act Outside of Employment—Benefit to Employer—Employee not Entitled to Compensation.—An injury suffered by an employee in voluntarily doing something entirely outside of his employment, even though of benefit to his employer, is not an injury suffered by him in the course of his employment.

[3] Id.—Safety Engineer of Mining Company — Assistance in Caring for Sick Employees—Direction of Superintendent—Services Within Scope of Employment.—Where the safety engineer of a mining company was directed by its superintendent to assist in taking care of the company's employees afflicted with influenza during an epidemic, the engineer's services in so doing were not voluntary, and although they were exceptional and without the usual scope of his employment, they were, by reason of such direction, within the actual scope, and the engineer was entitled to compensation for an incapacitating illness contracted in the performance thereof.

[4] Id.—Application for Compensation—Cause of Illness—Burden of Proof.—In claiming compensation for an incapacitating injury resulting from illness in caring for an employer's influenza patients, the burden rests upon the claimant to show that his illness resulted from the exceptional exposure to which he was subjected in the performance of such services.

[5] Id.—Disturbance of Award—Power of Court.—The supreme court cannot disturb an award of the Industrial Accident Commission unless it can say that a reasonable man could not reach the conclusion which the commission did.

[6] Id.—Illness from Caring for Influenza Patients—Sufficiency of Evidence.—In this proceeding to annul an award of compensation for an incapacitating injury of the heart resulting from influenza, the evidence sufficiently supports the finding that the

1. Recovery of compensation under Workmen's Compensation Act, for incapacity resulting from disease, notes, 2 Ann. Cas. 140; 15 Ann. Cas. 886; Ann. Cas. 1913A, 1121; Ann. Cas. 1918B, 309; 11 A. L. R. 790; L. R. A. 1916A, 289.

disease was contracted from the exceptional exposure to which the employee was exposed in caring for his employer's influenza patients, and was not contracted because of the exposure to which he was subjected in common with the rest of the community.

PROCEEDING on Certiorari to review an order of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

R. P. Wisecarver and Redman & Alexander for Petitioner.

A. E. Graupner for Respondents.

OLNEY, J.—This proceeding is one seeking the annulment of an award of the Industrial Accident Commission. One Rebstock was taken ill with influenza while in the employ of the petitioner, a mining company, resulting in an affection of the heart which incapacitated him for anything but light work. For this he claimed and was awarded compensation. Two grounds are advanced for the annulment of the award; first, that injury by disease is not an injury for which compensation could be awarded under section 21 of article XX of the constitution as it read before its recent amendment and at the time Rebstock contracted influenza, and, second, that the disease was not incurred by him as the result of his employment.

[1] The case markedly resembles what is known as the Slattery case, San Francisco v. Industrial Acc. Com., ante, p. 273, [191 Pac. 26], decided by us since the submission of the present case, and the question presented by the first ground urged for annulment, which is purely a question of law, was there discussed and determined adversely to the contention of the petitioner here. No discussion therefore of that question is necessary other than a reference to that decision and the statement that we adhere to the views there expressed.

The question presented by the second ground urged, that Rebstock did not contract the disease as the result of his employment, is of course a question of fact and cannot be so summarily disposed of, although the substantial facts of the case are in most respects the same as those of the Slattery case. Rebstock was employed at the company's mine in Plumas County as a "safety engineer." His duties in that

capacity did not require him to give attention to or come in contact with sick employees of the company, at least above ground. The epidemic which prevailed throughout the country in the fall of 1918 did not omit the little settlement at the company's mine, and a very considerable number of its employees were attacked. The company attempted to care for these cases in its hospital and in temporary accommodations for that purpose. Among the places so used was Rebstock's office. The number of regular medical attendants and nurses of the company was insufficient to meet the emergency, and in this situation Rebstock practically gave up his regular duties and for some five or six days devoted himself to caring for the influenza patients, bathing them, giving them food and medicine, attending to their wants generally, and having the closest personal contact with them. At the end of that time he himself was taken with the disease, resulting finally in his permanent industrial impairment, as already stated. The period of incubation of the disease is from two to five days, so that Rebstock in all probability contracted the disease during the period when he was exposed to the contagion in an exceptional manner because of his attendance upon influenza patients.

The company's first claim is that the exceptional exposure to which Rebstock was subjected, and by reason of which alone it can be claimed that he contracted his illness in the course of his employment, was incurred by him, not in the performance of the duties for which he was employed, but in the performance of services outside his duties, voluntary in nature, and not so much for the benefit of his employer as for that of the little community of which he was a part. The second claim of the company is that in any case there is nothing to show that Rebstock contracted his disease by reason of the exceptional exposure to which he was subjected, that it is not at all improbable that he acquired it by reason of the general exposure to which every member of the community was subjected at the time, that it is not possible to determine with any reasonable certainty whatever which exposure was the cause of his illness, and to endeavor to do so is but guessing, and that the award of the commission cannot be justified by a mere guess, but in order to be valid requires for its support an affirmative showing which takes the determination out of the realm of mere conjecture.

[2]   As to the first claim, it is true that an injury suffered by an employee in voluntarily doing something entirely outside of his employment, even though of benefit to his employer, is not an injury suffered by him in the course of his employment, and if the facts of this case were only those we have stated it might be that the award would have to be annulled on that ground.   But there was evidence in the case which would justify the commission in believing that the further fact was present that the company's superintendent had directed Rebstock to assist in caring for the company's influenza patients.   This fact, for we must take it to be the fact, at once took Rebstock's services in that respect out of the class of purely voluntary services.   [3]   Although the services were exceptional, and without the usual scope of Rebstock's employment, they were within its actual scope at the immediate time, because rendered in response to the company's direction.   (*Miner* v. *Franklin County Telephone Co.*, 83 Vt. 311, [26 L. R. A. (N. S.) 1195, 75 Atl. 653]; *Sunnyside Coal Co.* v. *Industrial Acc. Com.*, 291 Ill. 523, [126 N. E. 196], and authorities there cited.)   This is sufficient to justify the award so far as this particular point is concerned.

[4]   As to the second contention of the company, it is of course true that the burden rested upon Rebstock to show that his illness resulted from the exceptional exposure to which he was subjected in caring for the patients of the company.   It is likewise true that in order to meet this burden he had to show facts sufficiently cogent to take the determination of the question out of the realm of pure conjecture.   It is also true that it cannot be said from the facts of the case that it is certain that Rebstock contracted the disease because of his exceptional exposure to it.   But as was said in the Slattery case (*ante*, p. 273, [191 Pac. 26, 29], "certainty is not required.   It is not even required that the award be in our judgment in accord with the preponderance of the evidence, in order that we be not at liberty to annul it.   [5]   We cannot disturb the award unless we can say that a reasonable man could not reach the conclusion which the commission did."   The test so stated in the last sentence just quoted is that which must be applied here.

Upon the point as to how the disease was contracted by the employee, whether because of the exceptional exposure to

which he was subjected or because of the exposure to which he was subjected in common with the rest of the community, the material facts are the same as those of the Slattery case. The medical evidence in the Slattery case is by stipulation made a part of the record here, and the discussion upon this point in the Slattery case will suffice for the discussion in this. That discussion was:

"If there had been no epidemic in San Francisco at the time, and it appeared that Slattery as hospital steward had been exposed directly to a considerable number of influenza patients, and was not known to have been exposed otherwise, and had come down with the disease within the period of incubation after his exposure, the conclusion that the disease was[1] due to his exposure in the course of his work could hardly be questioned. But these are the actual facts, with the single exception that an epidemic was raging. To the extent of the severity of this epidemic the strength of the conclusion is weakened. It may well be that if the epidemic were so severe that the proportion of the general public who were attacked was anything like as great as the proportion of those exposed as was Slattery, the question of whether he was attacked because of the exposure incident to his employment or because of the exposure general to the public would be so much a matter of conjecture and speculation as not to warrant a definite conclusion as the basis of an award. But the actual fact is that of persons exposed as was Slattery the proportion of those attacked was from five to eight times as great as the proportion of those not so exposed. This ratio is so great that it cannot be said that the commission was not justified in concluding from it, in connection with the other facts, that Slattery's illness was due to the peculiar exposure of his employment. Its conclusion is the more justified by the fact that it coincides with the conclusions of most of the physicians who testified. Their opinions upon a point of this character are entitled to consideration, since it is part of their vocation to observe diseases and how they spread, and to draw conclusions from their observations."

There was one particular in which perhaps it might be said that the facts here differ from those of the Slattery case. The evidence there might be taken to show that Slattery's exposure to the disease, outside of that incident to his

employment, was less than the similar exposure of Rebstock. The testimony of Slattery's wife was that during the probable period of incubation he had been confined pretty strictly to his home and to the hospital where he was employed. This factor is absent in the present case. But, as the foregoing quotation shows, the reasoning by which we reached the conclusion that the finding of the commission that Slattery's illness had been contracted because of exceptional exposure should be sustained, did not proceed upon the assumption that he was not also exposed as a member of the community, or that his exposure in that respect was less than that to which the community in general was subjected. On the contrary, it proceeds on the assumption that he was exposed in that respect like anyone else, and the conclusion reached is justified by reason of the very great difference between the respective proportions of those attacked in the community at large and those attacked in the class exposed in the exceptional manner in which were both Slattery and Rebstock. **[6]** The proportion of the latter was from five to eight times as great, and this was deemed, and we deem it now, sufficient to remove from the realm of pure conjecture the conclusion that a person so exceptionally exposed and contracting the disease contracted it in the course of such exposure.

There was urged upon us in the Slattery case, and there is urged upon us now, the authority of *Martin* v. *Manchester Corporation*, [1912], W. N. 105, 106 L. T. (N. S.) 741, 5 B. W. C. C. 259, and it is well, perhaps, for us to express our views concerning it. It was there held that the conclusion was not justified that an employee of a scarlet fever hospital, particularly exposed to the disease in the course of his employment and who was attacked by it, acquired the disease through such exposure. It is said that he might have acquired it in some other manner. It is of course true that he might have acquired the disease in some other manner, but that he actually did so would seem to be quite improbable. The decision practically requires absolute certainty as to the fact that the disease was contracted because of the employment and in no other manner. This is not possible or necessary. All that is required is that degree of certainty upon which men may reasonably act, and by which their affairs may reasonably be determined.

It would seem well-nigh beyond argument that for the practical conduct and governance of human affairs the conclusion that a man attacked with scarlet fever had incurred the infection by his exposure to it in a scarlet fever hospital would appear with sufficient certainty when it appeared that he had been employed in the hospital during the period when he must have been infected, and there daily brought into close contact with patients suffering from the disease, and it did not appear that he had been particularly exposed in any other manner. We cannot follow the decision mentioned holding to the contrary.

Award affirmed.

Lennon, J., Lawlor, J., Shaw, J., Wilbur, J., Angellotti, C. J., and Sloane, J., concurred.

Rehearing denied.

All the Justices concurred.