[S. F. No. 10508.   In Bank.—August 23, 1923.]

# W. E. MYERS, Petitioner, *v.* INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION—EXPLOSION FROM WINE FUMES—INJURY TO EMPLOYEE—OCCURRENCE OF IN EMPLOYER'S SERVICE—EVIDENCE.—An employee who was severely burned, while taking the temperature of boiling sherry wine in a tank, by an explosion caused by alcoholic fumes from the tank becoming ignited from a lighted candle which he was using to enable him to read the thermometer, was "reasonably in the performance of his work" and performing service growing out of and incidental to his employment and acting within the course of his employment, where, according to his testimony, he was ordered by the superintendent of the winery to take the temperature of the wine; but assuming that the employee was told to measure the contents of the tank, as testified to by the superintendent, and that the employee misunderstood the superintendent's order, the employee was still working in his employer's service and not doing anything personal to himself.

[2] ID.—EVIDENCE—PROVINCE OF COMMISSION—FINDING.—In a proceeding to annul an award by the Industrial Accident Commission of compensation to an employee for injuries received from an explosion caused by alcoholic fumes from a vat of boiling sherry wine becoming ignited from a lighted candle which he was using to enable him to read a thermometer in taking the temperature of the wine, whether the testimony of the employee that he was ordered to take the temperature of the wine should be believed, or whether the testimony of the superintendent of the winery that he ordered the employee to measure the contents of the tank should be believed, was a matter resting solely with the commission; and there being competent evidence to support its finding that the employee sustained his injuries in the course of and arising out of his employment and that he was, at the time, reasonably engaged in the performance of his work, such finding will not be reviewed on *certiorari.*

---

1.  Injuries arising out of and in the course of employment under the workmen's compensation acts, notes, Ann. Cas. 1913C, 4; Ann. Cas. 1914B, 498; Ann. Cas. 1916B, 1293; Ann. Cas. 1917D, 195, 199, 209; L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

[3] ID. — WILLFUL MISCONDUCT — FINDING — EVIDENCE.—In such proceeding, where the evidence showed that an electric light on a cord of sufficient length to have been used by the employee was near the tank in question, and the fact was established that candles were in common use about the winery to supply light in dark spots, and when the electric power was off, and for the purpose of testing tanks for the presence of carbon dioxide gas before the men went inside to clean them, although the superintendent testified that he had repeatedly told the men to be careful about the use of candles, and had on one occasion told the injured employee not to use lighted candles around the fortified wine tanks, and it further appeared that the employee, when injured, was a common laborer, twenty-three years of age, whether the action of the employee in using the lighted candle amounted to willful misconduct or whether it did not amount to that, was for the commission to determine, as were also the matters, whether he was ignorant and uninformed, or knowing, forgot, or whether he was or was not warned, or whether he disobeyed orders made for his protection; and it cannot be said as a matter of law that the finding that the injury was not caused by the serious and willful misconduct of the employee was not justified by the evidence.

[4] ID.—TREATMENT OF INJURED EMPLOYEE—SECTION 9(A) OF ACT—CONSTRUCTION.—The intent of section 9 (a) of the Workmen's Compensation Act, which provides that where liability for compensation exists, such medical and hospital treatment as may reasonably be required to cure and relieve from the effects of the injury shall be provided by the employer, is that the employer shall, in the first instance, have the right to designate and select the physicians who are to give treatment to the employee; and the latter is authorized to make his own selection at the expense of the employer only where the employer has neglected or refused to provide the necessary service.

[5] ID. — PROCUREMENT OF TREATMENT BY EMPLOYEE — CONSENT OF EMPLOYER—LIABILITY FOR EXPENSES.—Consent of an employer, either affirmatively given or inferred from his inaction, to the employee to procure his own treatment renders the employer liable for the reasonable expenses thus incurred.

---

3. Serious misconduct of employee as bar to compensation, notes, Ann. Cas. 1916A, 790; 4 A. L. R. 117; L. R. A. 1916A, 75, 243, 355; L. R. A. 1917D, 133.

5. Liability of employer for medical aid furnished to injured employee, note, 7 A. L. R. 545.

PROCEEDING in Certiorari to annul an award of the Industrial Accident Commission allowing compensation for injuries. Award affirmed.

The facts are stated in the opinion of the court.

Philip S. Ehrlich for Petitioner.

A. E. Graupner and Warren H. Pillsbury for Respondents.

WASTE, J.—The petitioner seeks in this proceeding to annul the action of the Industrial Accident Commission in awarding compensation to Joseph G. Renteria for injuries found by the respondent to have been sustained by the employee in the course of and arising out of his employment at the winery of the petitioner near Livermore. While working about a vat of boiling sherry wine, Renteria was severely burned by an explosion caused by alcoholic fumes from the vat becoming ignited from a lighted candle which Renteria was using in his work.

The petitioner contends that there is no evidence in the record supporting the finding that the applicant sustained his injuries in the course of and arising out of his employment, and that he was, at the time, reasonably engaged in the performance of his work. The evidence taken before the Commission shows that Renteria was working around petitioner's winery as a laborer. He seems to have had no special duties to perform, but did whatever he was told to do by Mr. Jaffe, the foreman in charge of the place. The interior of the winery was dark, and much of the work had to be carried on by the aid of artificial light. There were electric lights in and about the place, but these did not afford sufficient illumination to enable employees to carry on their work in some locations. For this purpose candles were supplied by the petitioner and used by the workmen. It was necessary, from time to time, to take the temperature of the wine in the various tanks and vats in the winery. This was ordinarily done by reading the thermometers affixed to the sides of the tanks. There was one tank used for boiling sherry wine which had no such attachment. A thermometer had been provided, and a

workman had been ready to put it on the tank. He was told by both petitioner and his foreman Jaffe to do other work and put the thermometer on later, as "they didn't need it." Without such an appliance the temperature in the tank could be ascertained either by allowing some of the wine to run into a cup, or by dropping a thermometer on a line into the tank from the top.

On the day of the accident Jaffe gave an order to Renteria concerning the tank containing the boiling sherry wine. Jaffe testified that he told Renteria to measure the contents of the tank. Renteria declared that he was ordered to take the temperature of the wine. He had never done that work in this particular tank. He proceeded to get a candle, and a thermometer on a line, and went on to the top of the tank. He found the thermometer too large to go through the bunghole in the top of the tank, and removed the cover from the manhole. He lowered the thermometer into the wine in the tank and drew it up. While he was attempting to read it the fumes of alcohol escaping from the tank were exploded by coming in contact with the lighted candle. Renteria was hurled to the ground, his clothing afire, and was very seriously burned. [1] If Renteria's testimony is true, he was, at the time of his injury, performing an act which he had been ordered by petitioner's superintendent to perform, and was, as found by the Commission, "reasonably in the performance of his work." He was then performing service growing out of and incidental to his employment, and was acting within the course of his employment. (*Engels etc. Min. Co.* v. *Industrial Acc. Com.*, 183 Cal. 714, 717 [11 A. L. R 785, 192 Pac. 845].) Assuming it was Jaffe who spoke the truth, and that the employee misunderstood his order, he was still working in the petitioner's service and not doing anything personal to himself. As argued by respondent, "he was doing an act which he had done before at the instance of the employer, but in another way, and for the employer's benefit, and which he could reasonably expect to be told to do again." What he was doing had a direct connection with petitioner's business. [2] Whether the applicant should be believed, or whether Jaffe's testimony should be accepted, was a matter resting solely with the Industrial Accident Commission. There being compe-

tent evidence to support its finding, it will not be reviewed by this court. (*Dearborn* v. *Industrial Acc. Com.,* 187 Cal. 591, 594 [203 Pac. 112].)

[3] Petitioner's further attack is directed to the finding of the Commission that the injury to Renteria was not caused by the serious and willful misconduct of the employee. Having shown that there was available a safe artificial light at the time Renteria attempted to take the temperature of the tank with a lighted candle, he argues that the employee chose a dangerous instrumentality in disregard of his own safety and the safety of others, and that the finding fails of support. Section 21 of article XX of the state constitution, as amended November 5, 1918, prescribes that compensation shall be provided the employee to the extent of relieving him from the consequences of any injury sustained in the course of his employment, "irrespective of the fault of any party." The applicant and other witnesses testified that petitioner kept candles around the winery for use about the tanks and in other dark places generally, and that they were never forbidden to use candles and were never cautioned about their use or the danger arising from alcoholic fumes coming in contact with a flame. Renteria said he did not know the sherry tank was liable to explode, and had never heard of such an explosion before. On the other hand, Jaffe, the foreman, testified that he had repeatedly told the men to be careful about the use of candles, and had on one occasion told Renteria not to use lighted candles around the fortified wine tanks. · The fact was well established, however, that candles were in common use about the winery to supply light in dark spots, and when the electric power was off, and for the purpose of testing tanks for the presence of carbon dioxide gas before the men went inside to clean them. An electric light on a cord of sufficient length to have been used by Renteria was near the tank.

When injured, the applicant was a common laborer, twenty-three years of age. It was for the Commission to determine the facts from all the surroundings and attendant circumstances as they existed at the time of the injury. Whether the action of the employee amounted to willful misconduct as used in the act, and as defined in *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 186 [149

Pac. 35], or whether it did not amount to that, was for the Commission to determine. Whether he was ignorant and uninformed, or, knowing, forgot, or whether he was or was not warned, or whether he disobeyed orders made for his protection,—these were all matters for it to consider. (*United States Fidelity & Guar. Co.* v. *Industrial Acc. Com.,* 174 Cal. 616, 621 [163 Pac. 1013]; *Western Pac. R. R. Co.* v. *Industrial Acc. Com.,* 180 Cal. 416, 418 [181 Pac. 787].) We cannot say, as a matter of law in opposition to its judgment of the facts, that the finding of the Commission was not justified by the evidence.

The injured employee was very badly burned by the explosion. The Commission awarded him the sum of $2,528.98 for the reasonable medical and hospital treatment rendered necessary in his case. Petitioner attacks this allowance upon the ground that it was beyond the jurisdiction of the respondent to make it, in that the expenses were incurred in a manner not authorized by him. His contention is that he made suitable provision for the injured employee's care and attention, which was not accepted by Renteria; that there was no neglect or refusal on his part entitling the employee to make his own arrangements. There is no merit in the point. Section 9(a) of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831) provides that where liability for compensation under the act exists, such medical and hospital treatment as may reasonably be required to cure and relieve from the effects of the injury shall be provided by the employer. In case of his neglect or refusal reasonably to do so, the employer shall be liable for the reasonable expense incurred by or on behalf of the employee in providing the same. [4] The intent of this provision is that the employer shall, in the first instance, have the right to designate and select the physicians who are to give treatment to the employee. The latter is authorized to make his own selection at the expense of the employer only where the employer has neglected or refused to provide the necessary service. (*Leadbettor* v. *Industrial Acc. Com.,* 179 Cal. 468, 470 [177 Pac. 449].) There is a direct conflict as to what occurred in this case immediately following the explosion which caused the injuries to Renteria. The man was very seriously burned. He was in great pain and suffered in-

tensely. There was in the town of Livermore at the time a sanatorium sometimes called "the emergency hospital," but privately owned and having no connection with the municipality. It was run by a registered nurse, Miss McKenzie, and adjoined the office of Doctors Warner and Dolan. Dr. W. L. Meyers, Renteria's family physician, also lived in and had his office in Livermore. Testimony offered for the petitioner is that Jaffe, the manager, directed that Renteria be taken "to the emergency hospital." Renteria denied this, and swore positively that he requested to be taken immediately to his family physician for treatment, which was agreed to by Jaffe. The fact is he was taken to Dr. Meyers, who gave him a hurried "first-aid" treatment, and directed that he be taken at once to a private sanatorium maintained by Mrs. Aylward, also in Livermore. Through a misunderstanding, the party charged with taking Renteria to the Aylward sanatorium took him to Miss McKenzie's place. There Dr. Dolan and Dr. Warner proceeded to put on a temporary dressing. Dr. Meyers arrived shortly after, and Renteria was immediately removed to Mrs. Aylward's sanatorium.

No arrangement was ever made by petitioner with Dr. Dolan to furnish treatment at his expense, and, so far as the record discloses, no one was ever retained by him or instructed to attend Renteria. On the other hand, Mr. Jaffe visited Renteria at the Aylward sanatorium the morning after the explosion, and a number of times after that. He was solicitous about Renteria's condition, and expressed himself as satisfied with the treatment the young man was receiving. It is plain from a reading of the compensation act that it is the first duty of an employer to furnish medical aid and hospital service to an injured employee, and not merely to reimburse the latter after the service has been procured elsewhere. The Commission was entitled to accept as true the evidence of the applicant that his request that he be treated by his family physician, Dr. Meyers, was satisfactory to petitioner's manager. That was done. By tacit permission, and with the express approval of Jaffe, the treatment was continued by Dr. Meyers, and the employee was cared for at the Aylward sanatorium. [5] Consent of an employer, either affirmatively given or inferred from his inaction, to the employee to procure his

own treatment, renders the employer liable for the reasonable expenses thus incurred. (*Trustees, etc., v. Lehigh Valley Coal Co.,* 267 Pa. St. 474 [110 Atl. 255]; *Ripley's Case,* 229 Mass. 302 [118 N. E. 638]; *Bucyrus Co.* v. *Reisinger* (Ind. App.), 133 N. E. 516.) The reasonableness of the bills was by stipulation submitted to Dr. Gibbons, the physician and surgeon of the Commission, who filed his approval of the accounts. The jurisdiction of the Commission to make the award for reasonable value of the medical and hospital treatment received by the applicant in this case cannot be denied.

The award is' affirmed.

Lawlor, J., Myers, J., Richards, J., *pro tem.,* Wilbur, C. J., Seawell, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred.