[Civ. No. 7385. First Appellate District, Division Two.—May 8, 1930.]

PACIFIC INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, JOHN C. MURPHY et al., Respondents.

Bronson, Bronson & Slaven for Petitioners.

Edward O. Allen, R. P. Wisecarver, Carroll S. Bucher and Andrew F. Burke for Respondents.

SPENCE, J.—The petitioners seek to annul the award of the Industrial Accident Commission in favor of the respondent Murphy and against petitioner Pacific Indemnity Company, the insurance carrier of Butler-Veitch. It is contended that the finding that Murphy, while employed as a salesman of Butler-Veitch, sustained injury "occurring in the course and arising out of his employment" is not supported by the evidence.

Murphy was an employee of Butler-Veitch acting as a city salesman of automobiles on a commission basis. Murphy had certain freedom of action, as is customary with such salesmen, but Butler-Veitch generally directed and controlled his activities by requiring definite hours of floor duty and reports on his time spent on work other than floor duty. Murphy worked every third Sunday and was on call at all times. Admittedly, Murphy was an employee and would have been entitled to compensation for injuries received in the performance of his customary duties as city sales-

man. However, he met with the accident here involved under somewhat unusual circumstances.

Butler-Veitch, as Northern California distributors of Marmon and Roosevelt automobiles, sold cars to H. F. Burke, the local retail dealer in Merced. Burke purchased a certain Roosevelt car in May, 1929, and on July 26, 1929, drove the car from Merced to San Francisco and into the mechanical department of Butler-Veitch to have certain adjustments made. That evening Burke returned to Butler-Veitch's store in an intoxicated condition. Mr. Veitch was leaving town and left orders not to allow Burke to take his car while intoxicated. The following day, Saturday, July 27th, neither Mr. Veitch nor Mr. Butler was present. The sales department of the establishment was in charge of Mr. Crogan and the mechanical department was in charge of Mr. Reimus. Mr. Crogan was the sales manager supervising the work of the salesmen. Burke again returned to the store on Saturday morning in an intoxicated condition. Murphy was on floor duty at the salesroom, and seeing Burke's condition, took him to a barber-shop and later to a near-by hotel in an effort to straighten him up. Before Murphy left the hotel, Burke told him that he had to get back to Merced and asked Murphy to drive him there if he could not make it himself. Murphy told Burke that he would, but testified that he had no intention at that time of doing so, believing that Burke would go to sleep and not awake in time to leave that day. Murphy returned to the store and talked to Mr. Crogan about Burke's condition. Mr. Crogan stated that Burke's wife had been ringing up from Merced and that he had been telling her that Burke was all right. Crogan further told Murphy that if Burke could not get down he would like to see Murphy take him down or get him down there. Murphy worked on floor duty until 1 o'clock that afternoon. He then called on certain prospects, returning to the salesroom a couple of times. When he returned about 4 o'clock that afternoon Burke was there waiting for him. Burke was still in an intoxicated condition and, pursuant to Mr. Veitch's instructions, Mr. Reimus had refused to let him take his car. Burke told Murphy that they would not allow him to drive his car and renewed his request that Murphy drive him to Merced. Murphy told Burke that if he had to get to Merced he would take him. Murphy again spoke to Mr. Crogan and

told him that he would have to take Burke to Merced. Crogan said, "Someone will have to get him down there." Murphy took Burke's car with the knowledge and consent of Mr. Crogan and Mr. Reimus and started on the trip with Burke. About two hours later, while Murphy was driving the car toward Merced on the highway near Dublin, an accident occurred in which Murphy sustained his injuries.

Thereafter a question arose as to whether Murphy was entitled to compensation for his injuries from Butler-Veitch or Burke or from both. He filed an application with the Commission, joining Butler-Veitch and Burke, together with their respective insurance carriers as defendants. At the conclusion of the hearing the Commission made its award in favor of respondent Murphy and against petitioner Pacific Indemnity Company, the insurance carrier of Butler-Veitch, and dismissed the action as to the remaining defendants. In effect the conclusion reached was that Murphy was at the time of the injury an employee of Butler-Veitch and was performing services growing out of and incidental to his employment and acting within the course of his employment as contemplated by section 6a, subdivision 2, of the Workmen's Compensation Act (Stats. 1917, p. 834), and that he was not an employee of Burke. The evidence was sufficient to justify these conclusions and to support the findings made by the Commission.

There was some conflict in the evidence, but on this proceeding such conflict must be resolved in favor of the respondent. In addition to the evidence above referred to, it appeared that Murphy had only a slight acquaintance with Burke through seeing Burke at Butler-Veitch's store; that Burke was a customer of Butler-Veitch, but not a prospect for Murphy, as Murphy could not sell to the local dealers; that Murphy did not desire to make the long trip involved, but felt that he "was elected to take him down"; that he undertook the driving of Burke's car merely as a courtesy on the part of his employers; that various courtesies of a similar nature were customarily performed by distributors for their customers; that Murphy was to receive no compensation from Burke, but merely reimbursement for the expenses incurred; that Mr. Veitch testified that to a certain degree Murphy was performing a service for Butler-Veitch in driving Burke to Merced; that while normally someone

regularly assigned to driving would have been assigned to such work, Mr. Veitch stated that under the circumstances he might have told Murphy to ''go ahead'' if he had been personally present.

▇ The services performed by Murphy in driving Burke to Merced were exceptional and were not within the usual scope of his employment as a city salesman. Nevertheless, it may properly be inferred from the evidence that these services were connected with his employers' business, were of benefit to the employers and not personal to the employee, and were performed on behalf of the employers at the implied, if not express request of their sales manager, Mr. Crogan. Under these circumstances the services were within the actual scope of Murphy's employment and the fact that they were outside of the usual scope of his employment is immaterial. (*Engels Copper Min. Co.* v. *Industrial Acc. Com.*, 183 Cal. 714 [11 A. L. R. 785, 192 Pac. 845] ; *Payne* v. *Industrial Acc. Com.*, 84 Cal. App. 657 [258 Pac. 620].)

▇ The evidence failed to show any hiring of Murphy by Burke so as to establish the relationship of employer and employee between them within the meaning of the act. The evidence justified the findings made and the Commission did not exceed its jurisdiction.

The award is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 6, 1930, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1930.