JAMES GREEN, PETITIONER-APPELLANT, v. FRANK DE FURIA AND JOHN BENEDETTO, T/A BLACK AND WHITE GARAGE, DEFENDANTS-RESPONDENTS.

Argued June 13, 1955—Decided June 27, 1955.

292

*Mr. Herman M. Wilson* argued the cause for appellant (*Mr. Harvey A. Lieb,* attorney).

*Mr. Henry P. Hoey, Jr.,* argued the cause for respondents (*Mr. William P. Braun,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. The question on this appeal is whether appellant had removed himself from the coverage of the Workmen's Compensation Act at the time he sustained the injuries for which he now seeks recovery.

Prior to June 11, 1953 appellant, James Green, was employed as a gasoline station attendant. He worked the night shift and his duties were, as he described them, "to sell gas

and oil at night and answer the telephone (for tow calls), take the message and relay it to one of the men who did the towing."

Between 1 A. M. and 2 A. M. on the morning of June 11, he was sitting in the gasoline station with a friend known to him only as "Frankie," who frequently hung around the station at night, when the horn of an automobile parked in a gasoline station across the street short-circuited and commenced blowing. The noise created by the blowing of the horn continued for about five or ten minutes, during which time the phone located inside the door of the gasoline station rang but Green was unable to hear the message because of the blaring of the horn. The noise also aroused the sleeping neighborhood and several persons yelled from their windows to appellant to "stop the noise," and one of the neighbors called the police to report the incident.

Asked how the noise affected him and what he did, appellant said, "Well, I couldn't take care of the phone like I should and answer them when they called, so I went across the street to stop the horn myself." Stopping the horn consisted of raising the hood of the car and disengaging a wire.

This accomplished, appellant started back to his own station, but as he did so, he fell into a grease pit over which the offending car was parked, sustaining a fractured femur and other injuries for which recovery was sought in the Workmen's Compensation Division.

At the hearing before the deputy director, appellant acknowledged he had been told by one of his employers "never to leave the gas station alone." John Benedetto, one of the partners who owned the station at which Green worked, testified appellant's instructions were "to do his job, sell gas and oil, answer the phone calls, if anything came in never to leave the place alone but that alone meant never to leave anybody in there because even people sitting in the office if he is pumping gas they steal cigarettes and other things. That alone meant never to leave anybody else in there or anybody—never to leave the premises."

At the conclusion of the hearing, the deputy director denied compensation, holding the appellant, in crossing the street to fix the horn, was a volunteer and had departed from his own employment. On appeal from the denial of compensation, the County Court held otherwise, concluding that appellant's "leaving of his post was designed to serve the business of his master," and therefore the injury arose out of and in the course of the employment, and entered an award in appellant's favor.

In the Appellate Division, 34 *N. J. Super.* 521, the majority reversed the determination of the County Court, holding while "much could be said to support the conclusion of the deputy director that petitioner was not in fact on the business of his employer at the time," it was also clear the petitioner "was specifically enjoined by his employers not to leave the premises" and therefore "his injury while so doing takes him out of the coverage of the statute."

In his dissenting opinion, the minority judge found since towing was part of the defendants' business, the answering of the telephone was an important part of appellant's duties, and appellant's testimony that the continuous noise interfered with conversation on the telephone, which caused him to eliminate the difficulty, was entitled to credence and the act was reasonably related to the employment and hence arose out of the employment. Furthermore, the minority judge was of the conclusion that appellant, in leaving the premises, had not disobeyed his employer's instructions, which were simply "never to leave the place alone," since "Frankie" was in the station when appellant crossed the street and the station was in full view of the appellant at all times.

██ The line which separates acts of an employee performed for his own personal benefit and those done in furtherance of his master's interests concededly is at times an illusive one, if it exists at all. Compare *Pacific Indemnity Co. v. Industrial Accident Commission*, 105 *Cal. App.* 535, 288 *P.* 129 (*D. Ct. App.* 1930), and *Pawela v. Niagara From the Air, Inc.*, 264 *App. Div.* 962, 37 *N. Y. S. 2d* 66 (*App. Div.* 1942), with *Ridler v. Sears, Roebuck & Co.*, 224 *Minn.*

256, 28 *N. W. 2d* 859 (*Sup. Ct.* 1947), and *Priglise v. Fonda, J. & G. R. Co.,* 192 *App. Div.* 776, 183 *N. Y. S.* 414 (*App. Div.* 1920). In deference to the broad and liberal interpretation to be accorded workmen's compensation laws, *Gargiulo v. Gargiulo,* 13 *N. J.* 8, 13 (1953); *Spindler v. Universal Chain Corp.,* 11 *N. J.* 34, 38 (1952), the courts have expanded the concept of "arising out of the employment" to include acts normally outside the employment performed for the benefit of third persons but the effect of which is to foster public good will toward the master, *e. g., Yates v. Humphrey,* 218 *Iowa* 792, 255 *N. W.* 639 (*Sup. Ct.* 1934); *Gross v. Davey Tree Expert Co.,* 248 *App. Div.* 838, 290 *N. Y. S.* 168 (1936); *Pacific Indemnity Co. v. Industrial Accident Commission, supra; Pawela v. Niagara From the Air, Inc., supra; Larson, Workmen's Compensation Law,* § 27.22 (1952). Certainly, even if we assume the motivating factor of Green's mission across the street was to appease the neighbors who had been awakened by the sound of the horn, it is arguable that the case falls within this classification and compensation ought to be allowed regardless of any other nexus between his conduct and his employment.

 In any event, the answer to the question whether Green was a volunteer when he left the station and walked across the street to stop the horn depends upon the acceptance or rejection of his testimony that the noise of the horn rendered impossible the performance of his conceded duty to answer the telephone. No one disputes the right of an employee to remove obstacles interfering with the performance of his obligations to his employer, irrespective of whether the interference was occasioned by the act of a third person or of incidental benefit to others than the immediate employer. *Oklahoma Ry. Co. v. Cannon,* 198 *Okl.* 65, 176 *P. 2d* 482 (*Sup. Ct.* 1946); *Texas Employers Ins. Ass'n v. Ferguson,* 196 *S. W. 2d* 677 (*Tex. Civ. App.* 1946); *Leary v. Dept. of Labor & Industries,* 18 *Wash. 2d* 532, 140 *P. 2d* 292 (*Sup. Ct.* 1943). It matters not whether the act performed and the risk assumed by the employee is directly

connected with the employment or extraordinary in character, so long as the employment is a necessary factor leading to the accident. *Geltman v. Reliable Linen & Supply Co.,* 128 *N. J. L.* 443, 446–7 (*E. & A.* 1942) ; *Gargiulo v. Gargiulo, supra,* 13 *N. J.,* at *page 12.*

We agree with the County Court and the minority below that there is no basis on the record before us for denying credence to appellant's testimony as to his inability to answer the telephone. Certainly it is not beyond the realm of belief that the raucous noise of the modern automobile horn is capable of drowning out a telephone conversation immediately across the street. Respondents suggest, however, that it is highly improbable that appellant received a telephone call at the precise time the horn was blowing. We fail to see merit in this suggestion. One of appellant's specific duties was to answer the telephone for emergency tow calls. A call could have come at the time the horn was blowing as well as at any other time. Moreover, we note no attempt was made to attack appellant's testimony in this respect on cross-examination.

But, it is said, even if the noise of the horn constituted an interference with appellant's answering of the telephone, nevertheless compensation should be denied because the means of eliminating the interference—going across the street to disengage the horn's wire—was unreasonable in view of the fact that appellant might have accomplished the same result by the simple expedient of closing the door.

Perhaps he could have. However, his failure to select the most reasonable course of action—indeed, his selection of even the most foolhardy course of action—does not convert him into a volunteer so long as the end result was related to the employment. It is fundamental in the workmen's compensation law that the negligence or even the foolishness of the employee does not bar recovery when it is short of intentional or willful misconduct. *R. S.* 34 :15–7; *Burns v. Vilardo,* 26 *N. J. Misc.* 277, 279 (*Sup. Ct.* 1948) ; *Larson, op. cit., supra,* § 2.10. As was said in *Barrese v. Standard*

*Silk Dyeing Co.*, 10 *N. J. Misc.* 1293 (*Sup. Ct.* 1932), affirmed 110 *N. J. L.* 565 (*E. & A.* 1933):

"The question of how an employee fulfills the duties imposed upon him by the master is immaterial * * * so long as the employee is actually engaged in his master's business and is fulfilling his duties in a manner which to him appears reasonable."

See also *Belyus v. Wilkinson, Gaddis & Co.*, 115 *N. J. L.* 43 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 92 (*E. & A.* 1936).

██ Is the appellant to be denied compensation because he violated a specific order or command of his employer "not to leave the premises alone"? Respondents say Green's condict constituted disobedience of a specific instruction limiting the sphere of his employment to the premises of respondents' gasoline station and that the injury is therefore not compensable, relying on *Bigos v. Waddill & Skelly*, 4 *N. J. Super.* 3 (*App. Div.* 1949); *Reimers v. Proctor Publishing Co.*, 85 *N. J. L.* 441 (*Sup. Ct.* 1914); *Smith v. Corson*, 87 *N. J. L.* 118 (*Sup. Ct.* 1915); *Reis v. Breeze Corp., Inc.*, 129 *N. J. L.* 138 (*Sup. Ct.* 1942).

In the main, the cited cases all involve situations where the employee violated specific instructions which the employer had given primarily, if not exclusively, for the safety of his employees. This was not the case here as concededly the instructions were designed to prevent pilferage. However, acknowledging the cases have distinguished between instructions which delimit the *locus* of the employment and those which merely prescribe the method by which the work shall be done, it is difficult to perceive what logical or practical reasoning underlies the distinction. For a violation of instructions as to place of employment is no different from a violation as to the method of accomplishing the work. The question in all such cases is whether the disobedience was, under the particular circumstances, a reasonable deviation.

In any event, it is clear the employee is not to be denied compensation unless he has actual notice of the rule which he is alleged to have violated. *Larson, op. cit., supra*, at

§ 33.20; 6 *Schneider, Workmen's Compensation*, § 1577(*d*). Here the employer insists Green's instructions were "never to leave the premises alone," which, according to Benedetto's testimonial expansion of the rule, meant never to leave the premises at all. Whether the rule was intended to be so rigid is subject to some doubt as even Benedetto testified on cross-examination that if there was some one present whom he trusted he would not mind his employee's leaving the premises.

Green, on the other hand, testified his instructions were "never to leave the gas station alone," and he added no qualification of the word "alone" to show that he understood the rule to be that he was never to leave the premises at all. It is his understanding of the rule—and not his employer's—which controls. Accordingly, the circumstances present compel us to conclude he was not guilty of willful disobedience of his employer's work rule—as he understood it—since his friend "Frankie" was left in attendance when he walked across the street to fix the horn.

Even assuming the rigidity of the rule was fully communicated to the appellant and that he understood he was never to leave the premises at all, we still fail to perceive there was actually a violation of the rule in the "non-compensable" sense. First, the purpose of the rule, as Benedetto made so clear in his testimony, was to prevent third persons from stealing money or cigarettes from the station while there was no one in attendance. But, as both the County Court and the minority below indicated, the car in question was parked just across the street from the station which Green was tending and when he walked across the street the station was in his full view at all times. That being the case, appellant was properly protecting his employer's interests in so far as those interests were to be furthered by obedience to the rule itself.

Second, it is clear that regardless of how rigid an employer's work order may be, there are always situations which will occasionally arise which justify a departure from instructions and which the employer would have countenanced

had he been present. The judicial treatment of these situations has labeled them "emergencies," with the result that the scope of the employment is impliedly extended to include the performance of any act designed to save life or further the employer's interests. *Larson, op. cit., supra,* §§ 28.11 *et seq.* While there is some doubt whether the situation which confronted Green could technically be called an "emergency," nevertheless, according to appellant, a violation of the rule was necessary in order to fully perform his duties of answering the telephone. We entertain little doubt as to what appellant's future employment status would have been had he told his employer the next morning that he had failed to answer the telephone because of the noise coming from across the street.

In other words, appellant was confronted with a conflict between obedience to a rule the end result of which would would not be in the interest of his employer and violation of a rule in order to fulfill the duties of his employment. We think it an inescapable conclusion that compensation should not be denied because he adopted the latter course.

The final contention, that compensation should be denied because the appellant was guilty of an illegal act in tampering with a motor vehicle in violation of *R. S.* 39:4–49, is entirely devoid of merit. Surely there was no criminal intent when the appellant, at the urgent solicitation of his neighbors, at 2 o'clock in the morning abated a nuisance caused by a mechanical defect in an automobile which aroused and harassed an entire neighborhood by its sleep-destroying and irritating vibration.

For the reasons stated above, the judgment of the Appellate Division is reversed and the judgment of the County Court is reinstated.

*For reversal*—Justices HEHER, WACHENFELD, JACOBS and BRENNAN—4.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT and BURLING—3.