**Lee E. TAYLOR, Appellant,**

v.

**TAYLOR TIRE COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 16, 1955.

Harbison, Kessinger, Lisle & Bush, Ben L. Kessinger, Lexington, for appellant.

Grover C. Thompson, Lexington, for appellees.

STEWART, Chief Justice.

This is an appeal from a judgment of the Fayette Circuit Court confirming a ruling of the Workmen's Compensation Board which denied an award for Lee E. Taylor's injuries alleged to have arisen out of and in the course of his employment.

The record discloses, and the relevant facts are not in dispute, that Taylor, an employee of appellee corporation, Taylor Tire Company, and a son of the president of this corporation, on the date of the accident, was its personnel or service manager, and had been so employed for approximately eight years. His labor was confined mainly to the office where he supervised the work of the employees, waited on customers and took care of telephone calls. The services

of Taylor were not satisfactory, according to the testimony of Harry Tucker and of Harry W. Glass, the vice-president and the secretary-treasurer, respectively, of the corporation, and after consultation it was thought best for all concerned that Taylor secure a position elsewhere.

Accordingly, on January 12, 1953, after obtaining leave from Tucker, the vice-president, Taylor went to Louisville to be interviewed by the State Health Department, and there he was told to come back on January 14, 1953, to take an examination for employment as a sanitarian by the department. On this last date he returned to Louisville, with the approval of the president and vice-president of the corporation and in a company car with the gas and oil paid for by the latter. He also continued in the pay of his employer on these trips.

Taylor arrived in Louisville around noon. His examination was not completed until 4:30 in the afternoon. Afterwards he visited his sister in that city for a short while and he then started on his journey back to Lexington. When he reached a point about six miles from the city limits of Lexington, his automobile suddenly left the highway, he was thrown out of it and, as a consequence, he received a serious spinal injury which resulted in his being permanently paralyzed from the waist down.

The sole question raised in this appeal is whether Taylor's injury arose out of and in the course of his employment. If it did, in view of the stipulations, he is entitled to compensation for total permanent disability.

■ It is well settled in this and other jurisdictions that an injury must both arise out of and in the course of employment to entitle a claimant to compensation. See Stasel v. American Radiator & Standard San. Corp., Ky., 278 S.W.2d 721. In Louisville & Jefferson County Air Board v. Riddle, 301 Ky. 100, 190 S.W.2d 1009, 1011, we pointed out that an injury " * * * 'arises out of' the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. It

is in the 'course of' the employment when received while the employee is performing some service for his employer in the line of duty. We have often said that the words 'arise out of' refer to the cause of the accident, while 'in the course of' relate to the time, place and circumstances of the accident. * * *"

We also made this statement in the Stasel case, cited above, which is in every respect pertinent here [278 S.W.2d 723]: "Accidents arising out of the employment are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee. Harlan-Wallins Coal Corp. v. Foster, Ky., 277 S.W.2d 14. The accident must be one resulting from a risk reasonably incident to the employment. Harlan-Wallins Coal Corp. v. Stewart, Ky., 275 S.W.2d 912. It arises out of the occupation when there is a causal connection between the conditions under which the servant works and the resulting injury. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. * * *"

The evidence in this case clearly shows that the accident and the resulting injury had neither a causal connection with the work Taylor was required to accomplish nor any relationship to some service he was at the time undertaking in behalf of his employer. He testified at the hearing: "The sole purpose of the trip was to take an examination as sanitarian with the State Health Department;" and he further stated: "My father agreed and knew that I went to Louisville to see about this new job. I did not transact any business for Taylor Tire Company on this trip. It was strictly a personal trip and I was alone."

■ As Taylor's injury did not occur from exposure to a risk incident to his employment, which is plainly evident from the language just quoted, it did not arise out of or in the course of his employment. We therefore conclude, as did the Board and

the lower court, that his application for compensation was properly disallowed.

Contending his mission was connected with his master's business, Taylor relies upon two domestic decisions to support this position. These are Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524, and Turner Day & Woolworth Handle Company v. Pennington, 250 Ky. 433, 63 S.W.2d 490.

The Hollenbach case was the first decision of this Court affecting our Workmen's Compensation Act, KRS 342.001 et seq. There one Hollenbach, an employee, shortly before quitting time, went to a basement washroom of his place of work for the purpose of cleaning up preparatory to his departure. His fellow workers, hearing a cry of distress shortly thereafter, rushed to him and found him unconscious, lying on the floor across an uninsulated electrically-charged wire. He died almost immediately without regaining consciousness. Compensation was allowed in this case because Hollenbach was at the scene of his employment and had not terminated his period of work when he received his hurt. That case differs in every respect from the one under consideration because, as has been conclusively shown, Taylor was neither on the job nor in the service of his employer at the time he was injured.

The Pennington case concerned an employee who received an injury while driving his own car, propelled by gas and oil furnished by his employer, to his home in Bowling Green. He was given permission and was allowed his expenses to go home on week ends after proceeding to various points to fulfill his work assignment. The employee was a slab sawyer who worked periodically and it was difficult to get a skilled man of this type to work only when needed. This Court, in holding such an injury compensable, pointed out that it was an inducement for the employee to remain in the employ of his company to allow him week-end trips home and that such an inducement was plainly coupled with his work agreement. This arrangement, as is apparent, was unlike the one in the case at bar in that Taylor was not encouraged to stay with his employer but had been told to hunt a new job; moreover, it would not have been a beneficial business practice nor good labor management upon the part of the corporation if Taylor had been authorized to consume his employer's time in an effort to secure another position.

Wamhoff v. Wagoner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 161 A.L.R. 1454; DuCharme v. Columbia Engineering Company, 28 N.J.Super. 365, 100 A.2d 707; and Pacific Indemnity Co. v. Industrial Accident Commission, 105 Cal.App. 535, 288 P. 129, are cases from other jurisdictions cited as controlling the facts involved herein. These decisions uphold the doctrine that an injury is compensable if it occurs when an employee is engaged in a service mutually beneficial to him and his employer, even though at the time such service was being carried out it was not within the scope of the worker's ordinary employment. The theory is advanced that Taylor in making the trips to Louisville to procure employment was undertaking a mission mutually advantageous to his employer and to himself. Each would profit by Taylor's absence from the organization and his installation in another job, it is argued. We are unable to understand how this doctrine fits the facts of this case. It is true the corporation might have benefited by the removal of Taylor from its working force but the same effect could have been accomplished by his outright dismissal. Certainly it was not incumbent upon the corporation to send Taylor to Louisville in search of a job. This was a venture he undertook on his own initiative for his sole advantage.

For the reasons given the judgment is affirmed.