58 N.J. Super. 215 (1959)
156 A.2d 11
HUBERT HAYES, PETITIONER-RESPONDENT,
v.
AMBASSADOR COURT, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1959.
Decided November 24, 1959.
*216 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Jacob R. Friedman argued the cause for the petitioner-respondent (Mr. Samuel B. Weisenfeld, attorney).
Mr. Frank Fink argued the cause for the respondent-appellant (Mr. James J. Carroll, attorney).
*217 The opinion of the court was delivered by GAULKIN, J.A.D.
This is a workmen's compensation case. The Deputy Director decided that the injury did not arise out of and in the course of employment, and dismissed the petition. The County Court reversed, and awarded compensation. The employer, Ambassador Court, Inc., appeals.
Petitioner was the superintendent of the employer's apartment building which contained 58 apartments and two stores. It is not denied that his duties included painting, plumbing, tile work, electrical repairs, removing wallpaper, tending the boilers and two incinerators, cleaning the stairways, hallways and basement, putting out the garbage, cleaning the sidewalk, and collecting rents.
Hayes testified without contradiction that he was required to wash the windows in vacant apartments, and that "all minor repairs" were his responsibility. He also testified that he was instructed to wash the windows in occupied furnished apartments, but this the employer denied.
Petitioner sustained his injuries when he fell while attempting to pry open a window in one of the apartments which had become stuck with paint. He testified that the tenant, who had moved into the apartment a few weeks before, had asked him to wash the windows. The apartment was a furnished one (there were only three or four in the building), for which the tenant paid a good deal more rent than was paid for the unfurnished, and therefore when she said "she figured she was entitled to service," he agreed and undertook to do it.
Hayes said no arrangement was made with the tenant for compensation. Although he acknowledged that he had anticipated a tip, he said that was because "they all gave me tips, regardless of what I done, whether it was in the line of duty or not, they gave me a tip." He admitted also that the tenant had given him a tip when he moved some furniture for her, but, on the other hand, he said that when he washed windows for a tenant of an unfurnished apartment *218 he agreed on a price beforehand, which he did not do here because he "figured that she was renting a furnished room and she was entitled to service." The occupants of the other furnished apartments never asked him to do their windows, he said, during the five months that he was superintendent.
After washing three of the windows petitioner discovered that the fourth was stuck, apparently because of exterior painting. He then undertook to pry open the window with a screwdriver and fell when the window abruptly came free.
The tenant was not produced as a witness. Mr. Coggan, appellant's president, not only denied that he had instructed Hayes to wash windows in occupied furnished apartments but he went further and said on direct examination:
"Q. Did you have any conversations with Mr. Hayes as regards doing work for tenants? A. Yes, sir.
Q. What was that? A. He wasn't supposed to do nothing for tenants."
The appellant contended before the Deputy and in the County Court that the petitioner's injuries did not arise out of and in the course of his duties because (1) he had been expressly instructed "to do nothing for tenants," and (2) even if such a prohibition was not proved, washing the windows was a venture undertaken by Hayes on his own for his personal and exclusive benefit and private reward. Petitioner denied these contentions and, in addition, argued that they had no relevancy to the case at bar for he was injured not while washing windows but while "unsticking windows" which was certainly within his authorized duties.
The Deputy Director made no finding upon the question of prohibition. He found against petitioner because (to quote from his opinion) "when he went in to do the job in Mrs. Major's apartment he went in for the sole purpose of securing some reimbursement on his own, unconnected with his employment. He was washing the windows as a gesture or favor, if you will, to a Mrs. Major, for which he anticipated *219 payment. Therefore, if in the course of that work he was injured, even though it was on the property of the respondent, it is my opinion it does not spell out liability."
The County Court, on the other hand, expressly held that the claimed prohibition had not been proved. We agree.
The testimony of Mr. Coggan, quoted above, was the only evidence of such a prohibition. It is to be noted that, when asked to tell what conversations he had with Mr. Hayes "as regards doing work for tenants," Mr. Coggan did not relate what had been said. Instead, his reply was "he wasn't to do nothing for tenants." Since there was no objection to this answer, we shall not comment upon its technical imperfection. However, even if we view this conclusion as being Mr. Coggan's impression of the substance of the conversation, it gives us nothing upon which we can say what this "blanket interdiction," as the County Court called it, meant to Hayes in terms of the specific activities which necessarily take place in an apartment house. As the Supreme Court said in Green v. De Furia, 19 N.J. 290, 299 (1955) "It is his understanding of the rule  and not his employer's  which controls."
We think Mr. Coggan's words were not intended, even by him, to be accepted literally, for it is inconceivable that even the most arrogant of landlords would tell the superintendent of such a large apartment house never to do anything at all for any tenant. Consequently, since we have no way of deducing from this answer which specific activities were forbidden to Hayes and which permitted, we agree with the County Court's observation that "a careful reading of the transcript below furnishes no testimony proving that washing a tenant's windows was specifically prohibited." In short, there was inadequate proof that Hayes was forbidden to wash windows in furnished apartments or told not to fix "stuck" windows.
This brings us to the second question  whether in the absence of such a prohibition Hayes' activity was beyond the scope of his employment. The Deputy held that he was *220 hurt while washing windows for pay, an errand of his own. The County Court, on the other hand, held:
"* * * the facts of the instant case describe an accident that happened while the petitioner was attempting to release a defective window  not while he was washing windows, as the respondent assumes. There is no question but that the window washing was interrupted when petitioner was confronted by the window that refused to open. Even if it be assumed that he was beyond the scope of his employment while washing the windows, petitioner stepped back into it when he undertook to release the paint-locked window.
A superintendent is defined as `one who has the oversight and charge of some place, institution, department or the like.' A defective window conceivably could have come to the petitioner's attention on a routine inspection or as a result of a tenant's complaint. Or, as in the instant case, the superintendent could discover it while he was engaged in a different task in the apartment. In any case, it seems inconceivable to me that a superintendent, who admittedly did plumbing, electrical and other work for his employer, would be obliged to put his hands in his pockets when he came across a simple defect such as a stuck window.
I am satisfied, after an examination of the transcript of the proceedings below, that the petitioner sustained the burden of proving a compensable accident."
We agree with the County Court. Cf. Miller v. C.F. Mueller Co., 132 N.J.L. 540, 546 (Sup. Ct. 1945).
Moreover, even if we were to consider the freeing of the window as part and parcel of the operation of washing windows, we would arrive at the same result. Common experience tells us that janitors and superintendents do do things for tenants, and that, although they receive tips for it, the landlord benefits as well from the good will and the satisfaction of the tenants. Cf. Britten v. Berger, 18 N.J. Misc. 215 (Dept. Labor 1940). Certainly an apartment house containing 58 apartments and two stores would soon be in a disagreeable ferment if a superintendent absolutely refused to do anything for any tenant.
Larson says (1 Workmen's Compensation, § 27.00, p. 400):
"An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the *221 employee's own assigned work is thereby furthered, is within the course of employment."
See also § 27.22(a).
In Green v. De Furia, supra, 19 N.J., at pages 295-296 the Supreme Court said:
"The line which separates acts of an employee performed for his own personal benefit and those done in furtherance of his master's interests concededly is at times an illusive one, if it exists at all. Compare Pacific Indemnity Co. v. Industrial Accident Commission, 105 Cal. App. 535, 288 P. 129 (D. Ct. App. 1930), and Pawela v. Niagara From the Air, Inc., 264 App. Div. 962, 37 N.Y.S.2d 66 (App. Div. 1942), with Ridler v. Sears, Roebuck & Co., 224 Minn. 256, 28 N.W.2d 859 (Sup. Ct. 1947), and Priglise v. Fonda, J. & G.R. Co., 192 App. Div. 776, 183 N.Y.S. 414 (App. Div. 1920). In deference to the broad and liberal interpretation to be accorded workmen's compensation laws, Gargiulo v. Gargiulo, 13 N.J. 8, 13 (1953); Spindler v. Universal Chain Corp., 11 N.J. 34, 38 (1952), the courts have expanded the concept of `arising out of the employment' to include acts normally outside the employment performed for the benefit of third persons but the effect of which is to foster public good will toward the master, e.g., Yates v. Humphrey, 218 Iowa 792, 255 N.W. 639 (Sup. Ct. 1934); Gross v. Davey Tree Expert Co., 248 App. Div. 838, 290 N.Y.S. 168 (1936); Pacific Indemnity Co. v. Industrial Accident Commission, supra; Pawela v. Niagara From the Air, Inc., supra; Larson, Workmen's Compensation Law, § 27.22 (1952). * * *"
Under the evidence in this case it cannot be said that either washing windows or freeing them was so clearly outside the range of Hayes' duties as to be outside his employment. The fact that he anticipated or expected a tip for his work did not make the undertaking one exclusively for his own benefit, or such an errand of his own as not to be compensable.
For the foregoing reasons the judgment of the County Court is affirmed.