906 P.2d 127

Gerald A. WHARTON, Sr.,
Claimant–Appellant,

v.

HAWAIIAN ELECTRIC COMPANY,
INC., Employer–Appellee, Self–
Insured.

No. 16711.

Supreme Court of Hawai'i.

Nov. 15, 1995.

Gerald A. Wharton, Sr., on the briefs, Aiea, claimant-appellant pro se.

Sabrina R. Toma (Torkildson, Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington, of counsel), on the briefs, Honolulu, for employer-appellee, self-insured.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

■ This workers' compensation case is before us on appeal by claimant-appellant Gerald A. Wharton, Sr., from the Labor and Industrial Relations Appeals Board's (Board) decision and order denying his claim for benefits under the Hawai'i Workers' Compensation Law, Hawai'i Revised Statutes (HRS) chapter 386 (1993). The dispositive issue is whether Wharton suffered a psychological stress injury on or about February 11, 1989, arising out of and in the course of his employment. Because (1) Wharton's stress injury was a direct consequence of the disciplinary action imposed for his misconduct, and (2) Wharton's prohibited conduct exceeded the bounds of his employment duties, we hold that Wharton's stress injury falls outside the scope of worker's compensation coverage under applicable Hawai'i law. Accordingly, we affirm the Board's decision denying Wharton's claim.

## I. BACKGROUND

Wharton began employment with Hawaiian Electric Company, Inc., (HECO) in 1959. Between 1988 and 1989, he served as an instrument and control supervisor whose duties included maintaining and repairing electronic controls.

Wharton had been the subject of several counseling sessions throughout 1988 for a series of behavior and performance problems that HECO did not believe constituted conduct befitting a supervisor. These incidents included parking violations, failing to return telephone messages in a timely manner, leaving the plant without notifying a supervisor, and failing to wear safety shoes. Most significant was Wharton's failure to follow company policy relating to the alteration of his time cards.

Upon investigation, HECO found that Wharton, without authority, changed two absences in his time cards to reflect industrial rather than sick leave. This violation of HECO's timekeeping procedure resulted in disciplinary action upon Wharton that included a twenty-day suspension for the unauthorized time card change incident, and a subsequent six-month probation for inappropriate behavior and job performance.

Wharton's twenty-day suspension extended from January 12, 1989, to February 10, 1989. He returned to work on probationary status on February 11, 1989, but, complaining of stomach pains, he left before his shift ended. Wharton worked again from February 13, 1989 through February 17, 1989, when he left again because of stomach pains. Although Wharton worked briefly again from March 6, 1989, he last reported to work on March 10, 1989.

On January 13, 1989, the day after his suspension, Wharton saw George Rhodes, Ph.D., a clinical psychologist. In his July 20, 1990 report, Dr. Rhodes stated that he treated Wharton utilizing psychotherapy from January 13, 1989 for stress reaction to his twenty-day suspension without pay and subsequent work-related stressors. Dr. Rhodes also stated that Wharton experienced increased physical symptoms and stress when "unrealistic expectations were placed on him in terms of a suspension and ... probation[.]"

On December 8, 1992, the Board found that Wharton sustained a stress-related injury as a result of his suspension and probation

for misconduct. The Board concluded that, because Wharton's misconduct was a prohibited act, it was "unrelated to the method or manner of performing his maintenance and repair duties as an instrument and controls supervisor." Thus, "[Wharton]'s stress injury resulted not from any incident or condition of his work, but from misconduct outside the scope of employment . . . [and, therefore, was] not compensable."

Wharton timely appealed the Board's decision and order.

## II. *DISCUSSION*

### A. *Standard of Review*

Appellate review of the Board's decision is governed by HRS § 91–14(g)(5), which provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) *Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;* or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g) (1993) (emphasis added).

> [A]ppeals taken from findings [of fact] set forth in decisions of the Board are reviewed under the clearly erroneous standard. Thus, the court considers whether such a finding is [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.] The clearly erroneous standard requires

this court to sustain the Board's findings unless the court is left with a firm and definite conviction that a mistake has been made.

> A conclusion of law . . . is not binding on an appellate court and is freely reviewable for its correctness. Thus, this court reviews [conclusions of law] *de novo,* under the right/wrong standard.

*Bumanglag v. Oahu Sugar Co., Ltd.,* 78 Hawai‘i 275, 279, 892 P.2d 468, 472 (1995) (citing *Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai‘i 100, 102–03, 881 P.2d 1246, 1248–49 (1994).

### B. *Wharton's stress injury was solely due to the suspension*

Wharton first contends that the Board erred in its Decision because it did not consider all of Wharton's documentary evidence.[1] We interpret this contention to mean that the Board erred in finding that Wharton "suffered a stress injury on February 11, 1989, as a result of his suspension and probation for misconduct." Finding of Fact No. 7.

In support of its finding, the Board explained as follows:

> We have found that [Wharton's] stress injury on February 11, 1989, resulted from his suspension and probation for misconduct. Although the work conditions as described by [Wharton] may have existed to some extent prior to his suspension and probation, [Wharton] was never disabled from stress until after his suspension. The record shows that [Wharton] was never disabled from stress until after his suspension. The record shows that [Wharton] underwent psychotherapy with Dr. Rhodes on January 13, 1989, the day after he was suspended, for a stress reaction. When [Wharton] returned to work on February 11, 1989, the first day of his probation period, he developed stress-related stomach pains and could not finish his shift. In this report dated July 20, 1990, Dr. Rhodes stated that [Wharton] suffered increased physical symptoms and stress when "un-

---

1. The index to the Record on Appeal indicates that Wharton's exhibits were considered by the Board and transferred to this court.

realistic expectations were placed on him in terms of a suspension and ... probation[.]"[2] These facts support our finding that [Wharton's] stress injury on February 11, 1989, was precipitated by Employer's disciplinary actions.

■ Accordingly, and pursuant to our review of the record, we hold that the Board did not err in finding that Wharton's stress injury arose as a result of his suspension for misconduct.

### C. *Injury Arising Out of and In the Course of Employment*

The dispositive issue therefore is whether Wharton's disciplinary-induced stress injury, because of his misconduct, is compensable under HRS 386–3 (1993).[3]

■ As a general rule in workers' compensation law, employee misconduct that involves deviation from the course of employment is material to the issue of compensability, although willful or negligent employee misconduct is generally irrelevant. Larson, 1A *Workmen's Compensation Law* (Larson), § 30.00 at 6–1 (1995). The test for determining whether an employee's activities are outside the course and scope of employment is stated by Professor Larson:

> When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to *method* of accomplishing that ultimate work, the act remains within

the course of employment. Violations of express prohibitions relating to incidental activities, such as seeking personal comfort, as distinguished from activities contributing directly to the accomplishment of the main job, are an interruption of the course of employment.

1A Larson, *supra,* § 31.00 at 6–10.

■ In other words, we must determine whether Wharton's "misconduct" was outside or within the bounds of his employment duties. To put it in another way, "[a] distinction must be made between [ (1) ] an unauthorized departure from the course of employment and [ (2) ] the performance of a duty in an unauthorized manner." *Pacific Tel. & Tel. Co. v. Workers' Comp. Appeals Bd.,* 112 Cal.App.3d 241, 245, 169 Cal.Rptr. 285, 288 (1980).

Wharton argues that his injury arose out of and in the course of his employment, *i.e.,* his violation of the policy regarding time card procedures—the unauthorized alteration of his time card—constituted "misconduct involving a violation of regulations or prohibitions relating to the method of accomplishing that ultimate work." The first question, therefore, is whether Wharton's misconduct was outside "the boundaries defining the ultimate work." If we conclude that Wharton's misconduct was outside the course of his employment, the second question is whether the same misconduct/injury analysis applies to this case involving (1) misconduct outside the course of employment, (2) followed by a disciplinary action of suspension imposed by

---

**2.** Upon review of his report dated July 20, 1990, Dr. Rhodes noted that Wharton felt that his "increased physical symptoms and increased stress level" occurred as a result of "unrealistic expectations [that] were placed on him in terms of a suspension and items of probation and a scrutiny placed on him at work that was not reportedly applied to other employees." If an employer's actions constitute unlawful discrimination and/or unlawful employment practices, an injured employee may invoke rights in other forums. *See, e.g.,* HRS §§ 378–2 and 378–32.

Moreover, although Wharton contended that he sustained job-related stress due to working conditions prior to his suspension, in each instances, physicians failed to attach any relationship between Wharton's claim for stress injury on February 11, 1989, and his employment.

Upon review of the record, there is substantial evidence establishing that Wharton's stress injury on February 11, 1989 resulted not from his work, but from his suspension and probation for misconduct.

**3.** HRS § 386–3 (1993) provides, in relevant part, as follows:

**Injuries covered.** If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as hereinafter provided.

Employer, and (3) a stress injury sustained as a result of that suspension. *Pacific Tel. & Tel. Co., supra,* answers both questions.

### 1.

In *Pacific Tel. & Tel. Co.,* an advertising salesperson sustained psychiatric injury as a result of an accusation and investigation by his employer that he had forged customer signatures on advertising contracts and the stress from the subsequent termination of his employment.

The court could not "conceive of a realistic argument that [the employee] would be directly or indirectly serving his employer by the forging of contract signatures. Accordingly, [the court held that any] injury sustained during the actual furtherance of the criminal activity of forgery would not be compensable." *Id.* at 246, 169 Cal.Rptr. at 285.

■ Moreover, in *Pacific Tel. & Tel. Co.* as in the present case, the wrongful actions of the employees were more than a violation of a regulation or prohibition relating to the *method* of accomplishing their work. In the present case, HECO's timekeeping policy specifically prohibited the alteration of time cards. Nevertheless, Wharton disregarded such policy and altered the time cards, charging his absences to industrial rather than sick leave. And of course, such misconduct has nothing to do with the work he was hired to do, *i.e.,* maintaining and repairing electronic controls. Instead, he committed a prohibited act similar to the alleged forging of signatures in *Pacific Tel. & Tel. Co., supra.* We therefore hold that Wharton's misconduct fell outside the "boundaries defining [his] ultimate work."

### 2.

■ Two exceptions to the foregoing rule have been made. One is when the employer has previously accepted the benefit of the forbidden practice with knowledge that the prohibition has been violated. 1 Larson, *supra,* § 27.14, at 5–221. Here, there is no evidence that HECO has previously accepted the benefit, if any, of altering time cards from sick leave to industrial to invoke the exception. Moreover, the evidence simply does not show that HECO should have reasonably foreseen Wharton's disregard of the timekeeping procedure policy not to alter time cards.

A second exception that allows compensation even though the claimant engaged in prohibited conduct is "when a prohibition is so general in its terms that it is readily outweighed by the specific benefit to the employer [of the doing of the prohibited act]." 1 Larson, *supra,* § 27.14, at 5–222. Illustrative of this rule is *Hayes v. Ambassador Court, Inc.,* 58 N.J.Super. 215, 156 A.2d 11 (1959). In *Hayes,* a building superintendent slipped and fell while washing windows for a tenant of a furnished flat. The court held that the employer's statement that the claimant was not supposed to do anything for tenants was a mere "blanket interdiction" insufficient to prove that the employee was forbidden from washing the windows, and therefore allowed the compensation. *Id.* at 219, 156 A.2d at 13.

In the instant case, the prohibition was not a mere "blanket interdiction." The prohibition was specific—employees were not to alter time cards—and should have been well understood by all employees. Moreover, Wharton's conduct did not further HECO's business. Indeed, the opposite is true because Wharton for his own benefit attempted to change his absences from sick leave to industrial. Accordingly, we hold that neither of the exceptions applies.

### 3.

Noting that "the claimed injury was not sustained directly during the course of the alleged criminal activity but sustained as a consequence of that accusation, investigation, and termination of [the employee]," the court in *Pacific Tel. & Tel. Co.* further held that if the employee "in fact engaged in the criminal act of forgery, his injury [as a consequence of the employer's accusation, investigation, and discharge of him] cannot be held compensable under the Workers' Compensation Act, [because] his injury would not be a consequence of his employment but incidental to his criminal conduct." 112 Cal.App.3rd at 246–47, 169 Cal.Rptr. at 285.

The hearing testimony of HECO's supervisors, Thomas Paresa and Alden Ishii, provides reliable, probative and substantial evi-

dence to support the Board's finding in this case that Wharton's conduct—alteration of time cards—was "unauthorized" and a prohibited act. Likewise, because we deem *Pacific Tel. & Tel. Co., supra,* persuasive, we hold that Wharton's disciplinary-induced stress injury did not arise out of and in the course of his employment.

### III. *Conclusion*

For the foregoing reasons, we affirm the decision and order of the Board denying Wharton's claim for workers' compensation benefits.